## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERIK CANTU JR., EMILY PROULX,<br>*Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. SA-24-CV-00382-XR |
| JAMES BRENNAND, CITY OF SAN<br>ANTONIO,<br>*Defendants*. | § § § § § | |

## <u>ORDER ON CITY OF SAN ANTONIO'S MOTION TO DISMISS</u>

On this date, the Court considered Defendant City of San Antonio's motion to dismiss (ECF No. 6), Plaintiffs' Response in Opposition (ECF No. 10), and Defendant's Reply (ECF No. 12) along with the parties' oral arguments presented on July 25, 2024. After careful consideration the Court issues the following order.

## BACKGROUND

On the evening of October 2, 2022, 17-year-old high school student Erik Cantu, Jr. was sitting in his mother's maroon BMW sedan with his girlfriend, 17-year-old Emily Proulx, in the parking lot of the McDonald's located at 11700 Blanco Road in San Antonio, Texas. ECF No. 1 ¶ 1.

Cantu and Proulx were eating and talking when, suddenly and without warning, the driver's door was wrenched open by an unidentified dark figure pointing a gun at them. *Id*.

The figure turned out to be former San Antonio Police Department Officer James Brennand, who had come to the same McDonald's responding to an unrelated disturbance call. As Officer Brennand was questioning witnesses, Brennand noticed Cantu's vehicle, which he believed (incorrectly) had been stolen. *Id*. ¶¶ 24, 2

Without identifying himself as a police officer, Brennand ordered Cantu to get out of his vehicle and attempted to physically drag him from his seat. Panicked, Cantu dropped his food and put his car into reverse, attempting to escape the unknown man who had just ripped open his car door and grabbed him. *Id.* ¶ 2

As the car reversed with the driver's door still open, Brennand unholstered his SAPD-issued firearm and fired five rounds in rapid succession into the driver's side of the car. Brennand then exclaimed "Shots fired, shots fired" into his radio before firing five more shots into the back of Cantu's vehicle as it drove away. *Id.*

Cantu was struck multiple times by Brennand's bullets, suffering damage to his stomach, diaphragm, lungs, liver, bicep, and forearm, and nearly died. The confrontation left him unconscious, breathing through a ventilator, and fighting for his life in a hospital bed for six weeks. *Id.* ¶ 3.

Emily Proulx was not struck but could hear the bullets passing immediately by her person and crashing into and around various points of the vehicle. *Id.* ¶ 4.

**Termination and Criminal Charges**

SAPD Police Chief McManus terminated Brennand two days after the shooting. A spokeswoman for the SAPD said Brennand violated his training and police tactics and procedures by approaching the vehicle before backup arrived. *Id.* ¶ 41.

In October 2022, Brennand was charged with two counts of aggravated assault by a peace officer, one count for Cantu and another for Proulx. In December 2022, a Bexar County grand jury indicted Brennand on two charges of aggravated assault by a public servant and one count of attempted murder. *Id.* ¶ 42. The attempted murder charge has since been dismissed. The criminal case is set for a jury trial on April 11, 2025.

On April 12, 2024, Plaintiffs filed a lawsuit against Defendants James Brennand and the City of San Antonio ("City"). *See* ECF No. 1. On August 9, 2024, the Court stayed civil proceedings against Defendant Brennand pending the outcome of his criminal trial.

Plaintiffs' claims against Defendant City of San Antonio allege violations of their rights pursuant to 42 U.S.C. § 1983; claims under the doctrine of *respondeat superior*; negligent hiring, training, retention, supervision, and failure to control; negligence; aggravated assault and battery with a deadly weapon; and exemplary damages. *Id*. ¶¶ at 105–121, 125–130.

Defendant City of San Antonio filed the Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6) that is now before the Court. ECF No. 6. Plaintiffs filed a response (ECF No. 10) and Defendant filed a reply. ECF No. 12.  Additionally, the parties presented oral arguments on July 25, 2024.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw

3

the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.    Analysis

### A.  San Antonio Police Department

Defendant first moves to dismiss any claims the Plaintiffs bring against the San Antonio Police Department ("SAPD"). ECF No. 6 ¶ 14–16. The Plaintiffs acknowledge in their Response to the Motion to Dismiss that the claims are against the City of San Antonio not the SAPD. ECF No. 10 ¶ 9. However, the Plaintiffs identify the SAPD as a Defendant in Count IX and make

allegations against the SAPD in Count V, Count VI, and Count VII. ECF No. 1 ¶¶ 110, 112, 121, 127–128.

Based on the Plaintiffs' assertion in its Response that there are no claims filed against the SAPD, the Court MOOTS Defendant's motion to dismiss claims against the SAPD.

## B. Municipal Liability

The Defendant next moves to dismiss the Plaintiffs' municipal liability claims arguing they fail to state a plausible claim under Rule 12(b)(6). ECF No 6 ¶¶ 10, 18–22. The Supreme Court made clear long ago that a local governmental entity can only be held liable under Section 1983 for constitutional harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Accordingly, a plaintiff suing a municipality under Section 1983 must show that "the municipality has a policy or custom that caused plaintiff's injury." *Crull v. City of New Braunfels*, 267 F. App'x 338, 342 (5th Cir. 2008) (citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Crull*, 267 F. App'x at 342 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

In total, Plaintiffs allege seven different practices that violated Plaintiffs' constitutional rights and directly led to Plaintiffs' injuries:

(1) SAPD has a culture and policy of escalating routine situations such that unnecessary, unreasonable, and excessive force is used.

(2) City policymakers, including Chief McManus, have repeatedly made the deliberate choice not to discipline officers for using excessive force, which have created an informal policy of tolerance and support for officers who unconstitutionally use excessive force.

(3) City policymakers have repeatedly reinstated officers terminated for misconduct, further encouraging an informal policy of tolerance and support for officers who unconstitutionally use excessive force.

(4) SAPD has a culture and policy of officers not waiting for back-up prior to engaging with suspects which leads to the escalation of simple situations into ones involving excessive use of force.

(5) SAPD has a culture and policy of failing to adequately train officers on proper techniques for approaching suspect vehicles, conducting routine vehicle inspections, and failing to wait on back-up to arrive to conduct a proper approach of a suspect.

(6) SAPD has a culture and policy of failing to adequately train officers on the appropriate situations for the use of force involving suspect vehicles and the proper use and timing of officer firearms.

(7) SAPD has a culture and policy of officers instinctually reaching for and using a deadly weapon regardless of the situation.

ECF No. 1 ¶ 47.

These alleged practices constitute three distinct violations: (1) a policy and custom of failing to train, supervise, and control, (2) a policy and custom of using excessive force, and (3) a policy and custom of failing to investigate or discipline officers for misconduct. The Court will address each claim in turn.

### 1. Failure to Train and Supervise

a. Failure to Train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); *see also Anderson v. Marshall Cnty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) ("Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish.").

Plaintiffs allege the City, as a matter of both policy and practice, has failed to adequately train, supervise, and control its officers such that its failure to do so manifests deliberate indifference. ECF No. 1 ¶ 106 a. To assert a claim of failure to train under § 1983, the Plaintiffs must allege facts that, if proven, show three elements: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010). "Municipal liability doesn't attach merely because 'a particular officer may be unsatisfactorily trained' or 'an otherwise sound program has occasionally been negligently administered.'" *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535 (S.D. Tex 2020) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 – 91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). And evidence that the Plaintiffs' injury "could have been

prevented if the officer had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

The City argues that the Plaintiffs' claim of failure to train fails on two points: (1) Plaintiffs fail to specify how the City's training program is inadequate and (2) Plaintiffs fail to identify a pattern of similar violations. ECF No. 6 at 10–11. In order for the Plaintiffs to survive a motion to dismiss, they "must allege with specificity how the training program is defective" as to "the tasks the particular officer must perform." *Taylor*, 488 F. Supp. 3d at 535 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), and *Roberts*, 397 F.3d at 293).

The complaint alleges that the City has formal and informal policies, practices, procedures and cultures of failing to adequately train its officers on the use and limits of force, including deadly force. ECF No. 1 ¶ 47. The Plaintiffs specifically allege the training program is defective in the following areas: (1) techniques for approaching suspect vehicles, (2) conducting routine vehicle inspections, (3) failing to wait on back-up to arrive to conduct a proper approach of a suspect, (4) appropriate situations for the use of force involving suspect vehicles, (5) proper use and timing of officer firearms, and (6) de-escalation tactics. *Id.* It appears the Plaintiffs plausibly allege specific training protocols that are inadequate and how they are deficient.

The complaint next alleges that "[t]he City's policymakers acted with deliberate indifference to the known or obvious constitutional violations that would result from such policies." ECF No. 1 ¶ 47. "'Deliberate indifference' is a 'stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 751 (S.D. Tex 2011) (quoting *Brown v. Bryan Cnty.*, *Okla*, 219 F.3d 450, 457 (5th Cir. 2000)). "To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Henderson v. Harris Cnty.*,

51 F.4[th] 125, 131 (5th Cir. 2022) (internal quotation marks and citations omitted). "A pattern requires *similarity* and *specificity*; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (alterations adopted) (internal quotation marks and citations omitted). Deliberate indifference typically requires a pattern, thus "a single incident is usually insufficient to demonstrate deliberate indifference." *Liggins v. Duncanville, Texas*, 52 F.4th 953, 956 (5th Cir.) (citations omitted).  In an attempt to satisfy the similarity component that a showing of deliberate indifference requires, the Plaintiffs point to ten separate incidents[1] whereby the SAPD utilized varying levels of force against citizens (ECF no. 10 ¶ 15) and conclude that those incidents sufficiently detail allegations of a deficient training program. *Id.* ¶ 16. Although the Plaintiffs provide detailed conduct of SAPD officers involved in use of force incidents with citizens (including the incident at hand); those allegations relate to officers' conduct not the City's conduct in training its officer. As a result, the examples are insufficient to satisfy *Monell's* second element that the City was deliberately indifferent in adopting a policy or custom of failing to adequately train its officers.

In addition to arguing the Plaintiffs have not met the *Monell* requirements for a claim of failure to train, the City contends that the Fifth Circuit has determined that "if a law enforcement department meets the state standards for training of its law enforcement officers, the plaintiffs cannot sustain a failure to train cause of action under 42 U.S.C. § 1983." *Gonzales v. Westbrook*, 118 F. Supp. 2d 728, 737 (W.D. Tex. 2000) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 798 (5th Cir. 2000); *Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992), *cert. denied*, 506 U.S. 824, 114 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Huaong v. City of Port Arthur*, 961 F. Supp. 1003, 1007

---

[1] *See Infra* Note 2

(E.D. Tex. 1997)).  The Plaintiffs have not alleged that the City fails to maintain the standard for training required by the state of Texas and therefore cannot sustain a failure to train cause of action.

For the aforementioned reasons, the Plaintiffs' complaint does not sufficiently allege facts supporting the § 1983 claim based on alleged failure to train.

b.  Failure to Supervise and Control

To prevail on its failure to supervise and control claim, Plaintiffs must establish that "(1) the municipality's supervision was inadequate; (2) the municipality's policymaker was deliberately indifferent in supervising the subordinates, and (3) the inadequate supervision directly caused the plaintiff's injury," *Clyce v. Hunt Cnty., Tex*, 515 Fed. App'x 319, 323 (5th Cir. 2013) (citations omitted). For the City to be liable for failure to supervise, it "must have been obvious that that the 'highly predictable consequence' of not supervising its officer[] was that he 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk*." Peterson*, 588 F.3d at 850 (citing *Brown v. Bryan Cnty.*, 219 F.3d at 461).  The Plaintiffs argue that Officer Brennand was a "probationary officer" that the City permitted to "patrol on his own without any supervision despite having only been out of the police academy for seven (7) months" and this lack of supervision was the moving force of Plaintiffs' injuries. ECF NO. 1 ¶ 34. But Plaintiffs have not demonstrated how Brennand's actions resulted from any lack of supervision of him and in fact have acknowledged that Brennand's actions were contrary to the City's policy thus negating any claim that Brennand's conduct resulted from a failure to supervise. *See* ECF No. 1 ¶ 41.

Like the failure to train claim, the Plaintiffs also assert that the City was deliberately indifferent in its supervision of Officer Brennand. ECF No. 10 at 16. The Plaintiffs again attempt to demonstrate deliberate indifference by showing a pattern of behavior of a number of encounters alleging excessive use of force between officers and citizens. *Id*. ¶ 15. However, none of the

examples cited by Plaintiffs pertain to Officer Brennand and cannot reflect a pattern of behavior by Officer Brennand. Further, the cited examples are not similar to the incident here as they do not involve those taken by a probationary officer and therefore do not support a pattern of behavior that would be sufficient to establish that the City was deliberately indifferent to it alleged failure to adequately supervise a probationary officer such as Brennand. The Plaintiffs complaint does not sufficiently allege facts supporting the § 1983 claim based on an alleged failure to supervise and control.

### 2. Excessive Force

Plaintiffs assert the officers of the SAPD violate the constitutional rights of individuals as a matter of widespread practice so prevalent as to comprise municipal policy. *Id.* ¶ 106(c). Specifically, Plaintiffs allege that the SAPD escalates routine situations such that unnecessary, unreasonable, and excessive force is used. *Id.* ¶ 47. They further allege that Chief McManus has been on notice of this practice. *Id.* Finally, they allege that this policy was a moving force in the constitutional violations against the Plaintiffs. *Id.*

The City challenges the Plaintiffs' excessive force policy claim by arguing that the citing of similar incidents of alleged police misconduct is insufficient to demonstrate deliberate indifference and therefore cannot survive. ECF No. 12 ¶ 5. The City argues that there is no similarity in the incidents the Plaintiffs provide as examples and "the allegations made by the Plaintiffs are limited to the facts surrounding their interactions with SAPD Officer Brennand and not widespread policy." ECF No 6 ¶ 22. The Court disagrees.

As in the *Monell* claims discussed above, to prevail on municipal liability theory of a practice of using excessive force, Plaintiffs must show that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional

right." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). The three requirements function to "distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

a. Policy or Custom

The Fifth Circuit has determined that an official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cnty*, 577 F.3d 612, 617 (5th Cir. 2009).

Generally, in order to find a municipality liable for a pattern based policy, "that pattern 'must have occurred for so long or so frequently that the course of the conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (internal citations omitted). A plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 850) (cleaned up). The complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller*, 130 F.3d at 167.

The City argues that the Plaintiffs have failed to establish a pattern of similar constitutional violations. ECF No. 6 ¶ 22 ("allegations made by the Plaintiffs are limited to the facts surrounding their interactions with SAPD Officer Brennand and not widespread policy.") The City argues that

the majority of the cases cited by the Plaintiffs are distinct and not similar in fact or violation. ECF No. 12 ¶ 7. The Court disagrees with this argument.

The Plaintiffs provide short factual summaries of ten (including the case here) specific instances that have occurred since 2012 where SAPD officers deployed excessive force resulting in the death or serious injury of citizens. [2] In all cited instances, the victims were unarmed, and the majority of the officers responsible for the excessive force faced little to no disciplinary action by SAPD.[3] One example cited by the Plaintiff, contains facts very similar to the case at hand. In June of 2022, A.J. Hernandez, a thirteen-year-old boy was driving a car underaged without a license. ECF No. 1 ¶ 56. Despite the fact Hernandez was driving the car at a speed of only five miles an hour, an SAPD officer shot and killed the boy. *Id.* The SAPD Officer that shot the boy was initially suspended for his actions but was ultimately not disciplined. *Id.* ¶ 57.     Another     example highlighted by the Plaintiffs, involves the shooting of Antronie Scott.   There, officers were attempting to arrest Scott who was sitting in his vehicle with his wife. ECF No. 1 ¶ 73.  Scott, unarmed, exited the vehicle in compliance with officers' commands but was subsequently shot in the chest and died. *Id.* Plaintiffs assert the SAPD Officer that shot Lee was only required to undergo additional training. *Id.* ¶ 74. Of the cases cited by the Plaintiffs, several demonstrate excessive force utilized by officer that do not involve firearms. For example, the Plaintiffs describe SAPD Officers' encounter with the owners/operators of a local bar. *Id.* ¶ 67–69. When an officer arrived

---

[2] The Plaintiffs' original complaint cites 14 different incidents of SAPD Officers utilizing various amounts of excessive force on unarmed citizens. ECF No. 1 ¶¶ 24–38, 56–87. The Defendant contends that several of the cited examples occurred after the incident at the core of this lawsuit and argued that those cases cannot be the basis of a prior "pattern or practice." ECF NO. 12 ¶ 6. The Court did not consider the "post-incident" cases cited by the Plaintiffs (Garcia ¶¶ 58–61 and Perez ¶¶ 78–81) as well as two cases the Plaintiffs included where the allegations of excessive force as pled were weak at best (McDuffie ¶ 62 and Rodriguez III ¶ 64) in arriving at the number of cases provided by the Plaintiffs as ten. The ten cases referenced are: (1) Cantu/Proulx ¶¶ 24–38, Hernandez ¶¶ 56–57, Alexander ¶ 63, Ometu ¶¶ 65–66, Ruiz/Jardon ¶¶ 67–69, Roundtree/Snowden ¶¶ 70–72, Scott ¶¶73–74, Aragon ¶¶ 75–77, Aguirre ¶¶ 82–84, Westall ¶¶ 85–87.
[3] The Plaintiffs' complaint alleges that two of the officers were terminated for their actions (including Officer Brennand in this case). ECF No. 1 ¶41, ¶77. The other officer that was terminated has since been reinstated. Id. ¶ 77

at the bar ostensibly to close the establishment[4], he grabbed one of the owners and threw her to the ground, cracking her jaw and then forcing her to the ground with his knee in her back. *Id*. ¶ 68. A second owner (and husband of the female owner) arrived in an attempt to intervene and the SAPD Officer then turned his attention to him, throwing him to the ground and choking him. *Id*. Eventually, other SAPD officers arrived and the Officer stopped choking the second owner. *Id*. ¶ 69. Plaintiffs claim these examples and others show a pattern of the "excessive and unreasonable use of force that is pervasive and part of the policy, practice and procedure of the City and SAPD." *Id*. ¶ 55.

The scenarios cited by the Plaintiffs all describe a similar pattern. An SAPD officer encounters an unarmed citizen, quickly escalates the encounter to a use of force situation, does not attempt to de-escalate the situation and then beats or shoots the individual. ECF No. 1 ¶¶ 24–38, ¶¶ 56–57, ¶ 63, ¶¶65–69, ¶¶ 70–77, ¶¶82–87; ECF No. 10 ¶ 15a–e, g, i–j.  In six of the ten cases cited, the individuals died as a result of the force used. ECF No. 10 ¶ 15. Following the cited incidents, the Plaintiffs allege that the majority of the officers directly involved in the incident were not disciplined. *See* ECF No. 10 ¶ 21.

At its current stage, "the procedural posture of this case is distinguishable from much of the case law on establishing a pattern." *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *6 (W.D. Tex. Sept 2, 2010). At the motion-to-dismiss stage, a pattern constituting a policy may be more generally articulated since "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Oporto*, 2010 WL 3503457, at *6 (cleaned up); *see also, e.g.*, *Reyes*

---

[4] Plaintiffs' complaint provides that the bar had stopped serving alcohol at 2 a.m. but was still open for a birthday for an employee. ECF No. 1 ¶ 66.  The Officer arrived and started ordering everyone out, stating he would have the Texas Alcohol Beverage Commission come out and start writing tickets. *Id*. ¶67.

*v. City of Austin, Inc.*, No. 1:21-CV-00992-LY-SH, 2022 WL 789333, at *4 (W.D. Tex. Mar. 15, 2022) (allegations of "about 10 [or] so" arrests of individuals who filmed police activity sufficiently pleaded a practice or custom); *Sanchez v. Gomez*, 283 F. Supp. 3d 524, 535–36 (W.D. Tex. 2017) (complaint that "describe[d] nine specific instances of EPPD officers using excessive force against mentally ill victims" survived motion to dismiss); *Oporto*, 2010 WL 3503457, at *5–6 (allegations of over thirty incidents of excessive force over fifteen years sufficiently stated a custom or practice under *Monell*).

Courts have not provided a red line to determine a set number of incidents necessary to establish a pattern. However, "[w]here the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett*, 728 F.2d at 768. The court in *Feliz v. El Paso Cnty.*, found that two incidents were sufficient to establish a *de facto* policy. 441 F. Supp. 3d 488, 498–99 (W.D. Tex. 2020). Here, the Court finds plausible Plaintiffs' claim that a pattern exists of SAPD utilizing unreasonable and excessive force on unarmed citizens. *See Sanchez*, 283 F. Supp. 3d at 538 ("[w]hile Plaintiffs may not allege sufficient facts to state a separate and independent claim for each of the individual cases, in the aggregate they support the reasonable inference that a pattern of excessive force exists.").

In addition to the ten examples of excessive force cited by the Plaintiffs, they also support their allegations by citing a press conference held by a local coalition for police reform and a formal request sent to the U.S. Department of Justice (DOJ) by a former San Antonio city council member requesting an investigation into allegations of obstruction of investigations of persons killed while in SAPD custody. *Id*. ¶ 52–53.

In the press conference, the local coalition noted that between 2010 and 2020, 106 people died while in SAPD custody. According to the Plaintiffs, the press release included five examples of excessive force used by SAPD Officers. *Id*. ¶ 52.  The letter sent to the DOJ, noted that "non-lethal excessive force is a serious problem for our City." *Id*. ¶ 53. The letter also notified the DOJ that "[t]he vast majority of . . . instances of excessive force are not reported by the victims because of fear of retaliation against the victims." *Id*. ¶ 53.

In *Flanagan v. City of Dallas*, the court determined that the plaintiff's complaint sufficiently pleaded a *Monell* claim for excessive deadly force by pleading a combination of past incidents, statistics, and statements by city officials. 48 F. Supp. 3d 941, 953 (N.D. Tex. 2014).

Adopting the reasoning of the *Flanagan* Court, this Court concludes the Plaintiffs have sufficiently pleaded a reasonable and plausible inference that excessive force against unarmed citizens is a pattern that appears to constitute a City policy. *See Barkley v. Dillard Dep't Stores, Inc.*, 277 Fed. App'x. 406, 413 (5th Cir. 2008) (acknowledging there are cases that may lead a court to infer that "because the officers received no reprimands or discharges from the city following such a flagrant use of excessive force, there must have been a preexisting disposition and policy of reckless disregard for life") (citing *Grandstaff*, 767 F.2d 161, 171–72 (5th Cir. 2008)).  As a result, the Court concludes that the Plaintiffs' allegations are sufficient to meet the first element of the *Monell* municipal liability test requiring a "pattern of conduct" that constitutes a policy. *Bennett*, 728 F.2d at 768.

b.  Final Policymaker Knowledge

To satisfy the second requirement of a municipal liability claim, the Plaintiffs must allege that a municipal policymaker had actual or constructive knowledge of the policy, custom or practice. *Holley v. Blomberg*, 142 F. Supp. 3d 517, 522 (S.D. Tex 2015) (citing *Pineda v. City of*

*Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Here, Plaintiffs allege that Chief McManus was the Chief of Police for the City at the time the acts and/or omissions forming the basis of this lawsuit occurred and he is a policymaker for the City. ECF No. 1 ¶ 13. Plaintiffs allege that "SAPD's regular use of excessive force has been caused and perpetuated by the City of San Antonio's policymakers' consistent failure to provide meaningful discipline when SAPD officers engage in excessive, unreasonable, and unconstitutional use of force." *Id*. ¶ 49.

Plaintiffs specifically allege that Chief McManus has been at the center of the City's failure to provide the necessary discipline, training, and policies needed to deter future misconduct and deter the City's culture of resorting too quickly to excessive force.  Plaintiffs assert Chief McManus repeatedly chose not to discipline, train or supervise officers for using excessive force and an obvious consequence of his choices would be that SAPD officers would continue to engage in additional acts of excessive force. *Id*. Plaintiffs allege that Chief McManus had knowledge of the excessive force because he was personally involved in investigating the cases. *See id*. ¶ 52.

The City does not appear to contest the Plaintiffs allegations that Chief McManus qualifies as an official with final policymaking authority and that he had knowledge of a custom or policy of excessive force. "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities." *Bennett*, 728 F.2d at 768 (5th Cir. 1984)).  The allegations are sufficient to plausibly state a claim that Chief McManus is a final policymaker and that he had actual or constructive knowledge of SAPD Officers using excessive force against unarmed citizens.  The Court concludes that the second requirement for municipal liability is met.

    c.  Moving Force Causation

Finally, Plaintiffs must meet the third requirement that the municipal policy was the "moving force" behind the violation of constitutional rights. To do this the Plaintiffs must "establish both the causal link ('moving force') and the city's degree of culpability ('deliberate indifference' to federally protected rights")." *Snyder*, 142 F.3d at 796. Plaintiffs allege that the custom or policy of excessive force by SAPD officers was the moving force behind their injuries and the City was deliberately indifferent to the injured citizens' rights as it failed to discipline or supervise officers for using excessive force. ECF No. 1 ¶ 47–40. A plausible inference can be made that a policy or custom of SAPD officers using excessive force on citizens caused the injuries that the Plaintiffs suffered when SAPD officers used excessive force on them. *See Sanchez*, 283 F. Supp. 3d at 539 ("Plaintiffs need only provide enough facts to allow the Court to make a plausible inference that the policy was a moving force behind the harm in this case. It does not strike the Court as implausible that the widespread practice of excessive force . . . directly caused this particular case of excessive force.).

Plaintiffs assert that Chief McManus and the city are consciously and deliberately indifferent to protecting the civil rights of its citizens as shown by the "growing list of numerous . . . SAPD incidents in recent years." ECF No 10 ¶ 20. Plaintiffs further contend that deliberate indifference is evidenced by SAPD officers making the same excessive use of force errors over and over again with little to no discipline administered by the City. *See id*. ¶¶ 20–21.

This is a close case. As noted above, at the motion to dismiss stage, a more general articulation of a pattern constituting a policy may suffice since "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct." *Oporto*, 2010 WL 3503457, at *6 (cleaned up). While this claim may not ultimately survive a Rule 56 challenge, taking Plaintiffs' allegations as

true, they have plausibly stated all three elements of a *Monell* claim for excessive force. Accordingly, the Court DENIES the City's Motion to Dismiss Plaintiffs' excessive force claim.

### 3. Failure to Investigate, Discipline, and Deliberate Indifference in Hiring

a. Failure to Discipline

i.    Policy or Custom

Plaintiffs next allege the City, as a matter of policy and practice, has failed to adequately discipline or investigate prior instances of similar misconduct, thereby leading officers to believe their actions will never be meaningfully scrutinized. ECF No. 1 ¶ 106 b.

Failure to act claims, such as Plaintiffs' failure to investigate or discipline claims, resemble the elements of a *Monell* claim for maintaining a policy or custom of using excessive force. First, plaintiffs must plausibly allege that the municipality has a custom or policy of failing to discipline officers, which they can establish by asserting "a persistent, widespread practice of officials or employees, which . . . is so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). The Plaintiffs must also plausibly allege that custom or policy of failing to discipline officers was a "moving force" behind the constitutional violation. *See id*. at 580 (*citing Monell*, 436 U.S. at 694). However, unlike a policy or custom of using excessive force, a custom of failing to discipline an officer does not itself violate a Constitutional right. Accordingly, a plaintiff must plausibly allege that policymakers implemented the custom or policy "with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *See id*. at 579 (quoting *Brown*, 520 U.S. at 407); *see also Devill v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) ("We have extended [the deliberate indifference standard] to cover

a plaintiff's allegations that the municipality failed to properly discipline its employees." (citing *Piotrowski*, 237 F.3d at 581)).

The City argues that the Plaintiffs have not identified a pattern of similar incidents to sufficiently bring a claim of failure to discipline. ECF No. 6 ¶ 22, ECF No. 12 at 3–6. But the Plaintiffs have referenced ten incidents[5] in which officers used excessive force against unarmed citizens which resulted in six deaths and two severely injured citizens. The Plaintiffs allege that those actions only resulted in the firing of two officers with one of those offices being re-hired. *See* ECF No. 1 ¶¶ 56–87. The Court rejected the City's argument above that the Plaintiffs' examples were too dissimilar and does so here for the claim that the City fails to discipline its officers for using excessive force. As the *Sanchez* court determined, "[t]his alleged lack of disciplinary measures plausibly suggests to the Court that [SAPD] had a blanket policy of not disciplining officers who were responsible for using excessive force." 283 F. Supp. 3d at 543.

The Plaintiffs also cite a    statistic that further supports their allegation that the SAPD fails to discipline its officers. Plaintiffs assert that the SAPD reinstates almost 70% of officers that get terminated for misconduct. *Id*. ¶ 50. Plaintiffs allege that this encourages officers to continue engaging in misconduct because they know they will be reinstated if they were ever to be terminated for misconduct. *See id*. The Plaintiffs note one extreme example of an SAPD officer that was fired six times and re-hired five times due to, among other things, violent encounters and domestic abuse. *Id*. The Plaintiffs also highlight excerpts from a letter sent by a San Antonio city council member to the Department of Justice that allege the SAPD intimidates citizens to keep them from reporting serious instances of excessive force and that the result is that the number of complaints of excessive force are artificially low which means "there are fewer opportunities for

---

[5] *See supra* note 2

police management to discipline the misconduct of problem officers." ECF No. 1 ¶ 53. Combining the City Council member's concerns as relayed to the Department of Justice along with the statistics regarding reinstatement after termination, and the specific examples of officers that used excessive force but were not punished, the Court finds that the Plaintiffs have plausibly alleged that the City has a policy or custom of failing to discipline SAPD officers for using excessive force. *See e.g., Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 613 (W.D. Tex. 2023) (finding Plaintiffs pled a plausible failure-to-discipline claim on similar facts); *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 942–44 (same); *Sanchez*, 283 F. Supp. 3d at 543–44 (same).

ii.    Final Policymaker

Addressing the second element, the Plaintiffs assert that Chief McManus is a policymaker for the City and he has repeatedly chosen "not to discipline officers for using excessive force" which has resulted in creating "an informal policy of tolerance and support for officers who unconstitutionally use excessive force. ECF No. 1 ¶ 47. The Plaintiffs also assert that Chief McManus, as a policymaker for the City "has been at the center of the City's failure to provide . . . necessary discipline." *Id*. ¶ 49.

The City does not appear to address the Plaintiffs' assertion that Chief McManus is policymaker for the City. The City does contend that Chief McManus would not have any "actual or constructive knowledge" of a policy or custom because there is no pattern or similar incidents. ECF No. 6 at 8; ECF No. 10 at 3. However, the *Piotrowski* court determined that "[a] pattern [of failure to discipline] could evidence not only the existence of a policy but also deliberate indifference." 237 F.3d at 582. As this Court concluded above, Plaintiffs have plausibly alleged a custom or policy of the City failing to discipline SAPD officers who use excessive force and therefore have plausibly alleged the deliberate indifference requirement.

iii.    Moving Force Causation

Plaintiffs allege the City policymakers failure to discipline officers for using excessive force is "the moving force behind the constitutional violations . . . which led to Plaintiffs' injuries." ECF No. 1 ¶ 47. "[W]hen a police officer knows their use of excessive force 'will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied.'" *Lujan v. Beard*, No. EP-21-CV-302-FM, 2022 WL 986442, at *5 n.74 (W.D. Tex. Mar. 31, 2022) (quoting *Grandstaff*, 767 F.2d at 170).

The Court finds the Plaintiffs have plausibly alleged a failure to discipline claim.  The City's motion is therefore denied as to Plaintiffs' failure to discipline claim.

b.  Deliberate Indifference in Hiring

Next, Plaintiffs allege that the City's hiring customs and practices pose a significant risk to the rights and safety of the public. Plaintiffs' complaint does not directly argue that City was deliberately indifferent in it hiring of Officer Brennand, but the allegations permit a properly drawn inference of such.[6]

For hiring and retention claims, deliberate indifference exists "where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *See Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000). The Supreme Court has emphasized that "[t]he connection between the background of the particular [defendant] and the specific constitutional violation must be strong." *Brown*, 520 U.S. at 412.

---

[6] Plaintiffs' original complaint alleges the City failed to implement appropriate recruitment, hiring and candidate selection methods, and retention efforts. ECF No. 1 ¶ 43. The Plaintiffs complaint does state a claim of Negligent Hiring against the City. *Id.* ¶ 111.  The Plaintiffs' Response to the Defendant's Motion to Dismiss directly asserts the Plaintiffs have sufficiently alleged that the City was deliberately indifferent in its hiring of Officer Brennand. ECF No. 10 ¶¶ 31–33.

Plaintiffs argue that the City was deliberately indifferent in its hiring of Officer Brennand. ECF No. 10 at 15–16. However, Plaintiffs fail to allege any facts about Defendant Brennand's background or discipline history that would demonstrate deliberate indifference in the hiring or retention of Brennand before he was terminated.  As the Plaintiffs fail to connect the background of Defendant Brennand to their claim of constitutional violations, the Plaintiffs' claim that the City's hiring practices violate *Monell* are DISMISSED without prejudice.

### C.  *Respondeat Superior*

Plaintiffs' complaint alleges that Defendant Brennand was acting in his capacity as an employee, statutory employee, agent, and/or in partnership with SAPD and the City of San Antonio at the time of the incident and contends that the SAPD and City are liable for Defendant Brennand's actions relying upon a theory of *respondeat superior*. ECF No. 1 ¶¶ 108–110. Defendant moves to dismiss Plaintiffs' claim arguing that the theory of *respondeat superior* is not applicable to the City or municipalities at all. ECF No. 6 ¶ 17.

Defendant cites *Monell*, wherein the Supreme Court determined that under § 1983 municipalities cannot be held liable for acts of their employees under a theory of *respondeat superior*. 436 U.S. at 691. Plaintiffs provide no authority to support their argument that the City of San Antonio is liable for the action of Defendant Brennand under the doctrine of *respondeat superior*.

The Court grants the Defendant's motion to dismiss Plaintiffs' claim against the City under a *respondeat superior* theory.

### D.  Negligent Hiring, Training, Retention, Supervision, and Failure to Control

Defendants move to dismiss all Plaintiffs' state law negligence claims asserting the doctrine of governmental immunity. Texas governmental units enjoy immunity from claims unless

Texas has consented to allowing suit. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims Act, Section 101.021, provides a limited waiver to absolute governmental immunity from tort claims in three areas: (1) use of publicly owned vehicles, (2) premises defects, and (3) injuries arising from conditions or use of property. *See Brown v. Montgomery Cnty. Hosp. Dist.*, 905 S.W.2d 481 (Tex. App.—Beaumont 1995). The limited waivers of immunity do not include actions for negligent hiring, training, retention, supervision, or failure to control. "A claim which evolves from a law enforcement officer's wrongful shooting of the plaintiffs, though couched in terms of negligence, is actually one for an intentional tort for which sovereign immunity has not been waived." *Hernandez Rodriguez v. Quintero*, No. SA-06-CA-64-FB, 2007 WL 950399, at *4 (W.D. Tex. Mar. 19, 2007) (citing *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). Because Plaintiffs fail to assert that they suffered harm arising from action of the type for which the Texas Tort Claims Act waives governmental immunity, these state claims cannot be maintained.

Plaintiffs attempt to respond to Defendant's governmental immunity argument contending that a governmental unit can be liable for certain injuries proximately caused by the "negligence or a wrongful act or omission of an officer or employee acting within the scope of his employment." *Univ. of Tex. M.D. Anderson Cancer Ctr. V. McKenzie*, 578 S.W.3d 506, 513 (Tex. 2019). The Plaintiffs assert that the waiver encompasses claims for "personal injury . . . so caused by . . . use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." ECF No. 10 ¶ 39 (quoting Tex. Civ. Prac. & Remedies Code § 101.021(2) (the "Texas Tort Claims Act").

Plaintiffs argue that the Texas Tort Claims Act does not shield a municipal department from liability if the Plaintiffs' injury was proximately caused by a departmental officer's use of a

gun issued to him for service in his official capacity. ECF No. 10 ¶ ¶ 39–40 (citing *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205–08 (Tex. 2020). However, the *Rangel* Court determined that a governmental unit "uses" personal property only if it "authorizes or orders an employee to use [the] tangible personal property for a *specific purpose*." *Rangel*, 595 S.W.3d at 206 (emphasis added). Generally approving the use of the property is not enough. *Id*. at 207–08; *See Harris Cnty v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (an allegation that a county "enabled, authorized, or approved [a constable's] use of the firearm does not amount to an allegation that the county used the firearm" and "does not trigger the Tort Claim Act's waiver of immunity"). In the *Rangel* case cited by the Plaintiff, the court determined that when the Texas Department of Criminal Justice authorized a prison security officer to use a riot control device "specifically in response to [an] incident", the Department "used" those devices and immunity did not apply. *Rangel*, 595 S.W.3d at 208. The *Annab* Court, on the other hand, determined a county did not "use" a firearm when a constable used his county-issued firearm in a personal dispute while he was off duty. *Annab*, 547 S.W.3d 609.

This case is more like *Annab* than *Rangel*. The Plaintiffs have not alleged facts showing the City specifically authorized or ordered the officer to use his weapon in response to the situation involving the Plaintiffs. Section 101.021(2) does not apply to the Defendant City of San Antonio in this case.

### E. Aggravated Assault and Battery with a Deadly Weapon

Plaintiffs next assert claims of aggravated assault and battery with a deadly weapon against the City. ECF No. 1 ¶¶ 127–28. Defendant argues that the City of San Antonio is protected from these claims under the doctrine of governmental immunity. ECF No. 6 ¶¶ 31–32.

As discussed above, in Texas, governmental entities are immune from lawsuits bringing tort causes of action unless that governmental immunity is waived by the Texas Tort Claims Act. *See Brown v. City of Houston*, 8 S.W.3d 331, 333–34 (Tex. App.—Waco 1999, pet. denied). For intentional torts committed by employees there is no waiver of governmental immunity. *See* Tex. Civ. Prac. & Rem. Code §101.057. Claims arising out of assault, battery or any intentional tort are absolutely barred. *See Harmon v. City of Arlington, Texas*, 478 F. Supp. 3d 561, 577 (N.D. Tex. 2020); *City of San Antonio v. Dunn*, 796 S.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied).

Governmental immunity applies to the Plaintiffs' claims of aggravated assault and battery with a deadly weapon. Plaintiffs have not pointed to an applicable waiver. Defendant's motion to dismiss this claim is GRANTED.

### F. Exemplary Damages

Lastly, Plaintiffs assert that Defendant should be required to pay punitive damages. ECF No. 1 ¶ 130. Defendant cites *City of Newport v. Fact Concerts, Inc.*, asserting that punitive damages (also known as exemplary damages) are intended to punish the tortfeasor for intentional or malicious acts and to deter him or others from similar conduct. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (citing Restatement (Second) of Torts §908 (1979); W. Prosser, Law of Torts 9-10 (4th ed. 1971)). The Plaintiffs cite no authority on this claim. The Court agrees with the Defendant's position. Municipalities are immune from the imposition of punitive damages (also known as exemplary damages) under §1983. *See Skyy v. City of Arlington*, 712 F. App'x 396, 401 (5th Cir. 2017) (citing *Fact Concerts, Inc.*, 453 U.S. at 259-71).

**CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the Defendant City's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 6. The motion is **MOOT** as to Defendant's motion to dismiss claims against the SAPD. The motion is **GRANTED** as to Plaintiffs' claims against the City for: (1) municipal liability based on failure to train, supervise and control; (2) deliberate indifference in hiring; (3) *respondeat superior*; (4) state law claims of negligent hiring, training, retention, supervision, and failure to control; (5) aggravated assault and battery with a deadly weapon; and (6) exemplary damages.

The claims against the City for: (1) municipal liability based on failure to train, supervise and control and (2) deliberate indifference in hiring are **DISMISSED WITHOUT PREJUDICE**.

The claims against the City for: (1) *respondeat superior*; (2) negligent hiring, training, retention, supervision, and failure to control; (3) aggravated assault and battery with a deadly weapon; and (4) exemplary damages are **DISMISSED WITH PREJUDICE**.

The motion is **DENIED** as to Plaintiffs' claim against the City for municipal liability based on (1) excessive force and (2) failure to investigate or discipline.

The Court expresses no opinion on the merits of Plaintiffs' claim. Plaintiffs will ultimately have to provide evidence showing the City's awareness of (1) a pattern of excessive force and (2) a pattern of failing to investigate and discipline cases involving excessive force.  Plaintiffs will then have to connect those patterns to the incident in which they were injured. But taking Plaintiffs allegations as true, they have sufficiently pleaded *Monell* claims of excessive force and failure to investigate and discipline against the City.

It is **ORDERED** that the Plaintiffs confer with the Defendant City to submit a new proposed scheduling order.  The ORDER shall include a deadline to amend pleadings, discovery deadline, and a deadline for dispositive motions.

The Court has been informed that the criminal trial for Defendant Brennand has been rescheduled for April 11, 2025.  Accordingly, the civil proceedings against Defendant Brennand are **STAYED** pending the outcome of his criminal trial.

It is so **ORDERED**.

**SIGNED** this 12th day of December, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE